## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

SIDNEI MCCARTY,

     Plaintiff,                      CASE NO. 25-

                                      HON.

HERITAGE BROADCASTING
GROUP, INC., and HERITAGE
BROADCASTING COMPANY
OF MICHIGAN,

     Defendant.

_____

CARLA D. AIKENS (P69530)
THAMEKA I. HALL (P79693)
CARLA D. AIKENS, P.L.C
Attorneys for Plaintiff
615 Griswold, Suite 709
Detroit, Michigan 48226
844-835-2993
carla@aikenslawfirm.com
thameka@aikenslawfirm.com
_____
## COMPLAINT

*Plaintiff, Sidnei McCarty, by and through her attorneys, asserts there is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence.*

     PLAINTIFF, SIDNEI MCCARTY, by and through her attorney, CARLA D.

AIKENS, P.L.C., submit the following Complaint against HERITAGE

BROADCASTING GROUP, INC. and HERITAGE BROADCASTING COMPANY OF MICHIGAN ("Defendants").

## JURY DEMAND

COMES NOW PLAINTIFF, Sidnei McCarty, and hereby make her demand for trial by jury.

## JURISDICTION

1. Plaintiff, Sidnei McCarty, (hereinafter referred to as "Plaintiff" or "Ms. McCarty"), was a resident of the County of Muskegon, in the State of Michigan, at all times relevant to this action.

2. Defendant, Heritage Broadcasting Group, Inc. is a for-profit corporation with a continuous and systematic place of business located in the County of Wexford, State of Michigan., a registered agent address of 810 Cottageview Drive, Suite G30, Traverse City, Michigan 49684-2605, and a place of business located at One Broadcast Way, Cadillac, Michigan 49601.

3. Defendant, Heritage Broadcasting Company of Michigan is a for-profit corporation with a continuous and systematic place of business located in the County of Wexford, State of Michigan., a registered agent address of 810 Cottageview Drive, Suite G30, Traverse City, Michigan 49684-2605, and a place of business located at One Broadcast Way, Cadillac, Michigan 49601.

4.  All relevant actions giving rise to this complaint took place in Wexford County in the State of Michigan.

5.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331.

6.  This is a suit authorized and instituted pursuant to the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq.; declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.  Venue of this Court is pursuant to 28 U.S.C. § 1391(b), the judicial district in which a substantial part of the events giving rise to this claim occurred.

8.  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## FACTUAL ALLEGATIONS

9.  Plaintiff, Sidnei McCarty, is an African American woman that worked for the Defendant as a TV Host and Executive Producer, beginning on or about July 17, 2022.

10. Plaintiff entered an employment agreement with Defendant to earn a starting salary of $55,000, which was to be paid out biweekly.

11. Plaintiff was subjected to unfair heightened scrutiny, unattainable job expectations, and excessive workloads in comparison to her white counterparts.

12. In January 2023, human resource representative Leslie Nowlin and manager Dan Firnbach coerced coworker Kayla, administrative assistant, to say that Plaintiff was intimidating, threatening, argumentative, and aggressive toward her during a personal conversation.

13. Plaintiff made multiple complaints regarding discrimination and harassment including but not limited to coworkers refusing to work with/collaborate with her, disregarded her EP directives and leadership role, ignored safety concerns from aggressive viewers and staff, and personal belongings being stolen.

14. Plaintiff's complaints regarding discrimination and harassment were ignored by Defendants.

15. Plaintiff was the only on-air talent not asked to participate in an on-air capacity during staffing shortages, including the Election Period, which is arguably the most challenging time of the year.

16. Plaintiff was instead assigned to website and marketing analytics.

17. Plaintiff was eliminated from pursuing individual projects/promotions while her white coworkers were given promotions and interests were granted.

18. Plaintiff was never allowed to contribute to scheduled showtimes with her white coworkers but was required to include her white coworkers Lauren Scafidi, Michael Stephens, Haley Fascietti, and Katy Birecki on the shows that she anchored to promote and monetize their business opportunities.

19. Plaintiff offered to volunteer for pageant judge, hospitality team, and appearances to discuss her experience as a politician, professor, foodie, entrepreneur, but her offers were declined, unlike her white coworkers.

20. In Fall 2022, Defendants refused to allow Plaintiff to receive on-air training hosted by the Michigan Broadcasting Association.

21. In January 2023, Plaintiff requested accommodations for her diagnosis of scoliosis, PTSD, and vertigo, including but not limited to being able to hear, see, and speak instructions, ask questions, and limited physical mobility.

22. Without her requested accommodations, Plaintiff experienced elevated stress levels, migraines, vertigo, heart palpations, speech impediment, spinal impact, and severe neck and back pains.

23. Plaintiff requests for sick days and medical leave were disregarded, ignored, and denied by Defendants.

24. Plaintiff's accommodation requests for her disabilities were disregarded, ignored, and denied by Defendants.

25. Plaintiff was labeled as a threat on multiple occasions by Defendants after being falsely accusing of using a news story involving a black woman bringing a gun to work to threaten/intimidate other employees.

26. On or about February 1, 2023, Plaintiff was terminated after requesting accommodations and making complaints regarding discrimination and harassment.

27. Defendants justified its termination by comparing Plaintiff to the school shooter at Michigan State University, who was also African American.

28. Defendants replaced Plaintiff with a white male and female anchor on the show she produced and hosted.

29. Since the inception of the show on September 6, 2022, Plaintiff had never been required to seek approval for topics, stories, or guests.

30. Plaintiff filed a Charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").

31. The charge number for the EEOC is 471-2022-02315.

32. The EEOC issued a right to sue letter on June 11, 2025, which was not received until July 15, 2025, allowing Ms. McCarty ninety (90) days from the date of receipt to file her lawsuit.

33. The charges to the EEOC claim discrimination based upon Race, Disability, and Retaliation.

## <u>COUNT I</u>
## RACIAL DISCRIMINATION IN VIOLATION OF 42 USC § 1981

34. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

35. 42 USC § 1981 prohibits employers from intentionally discriminating against individuals, including employees, in the making and enforcement of contracts.

36. Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded her by the U.S. Constitution and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

37. By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who are non-African American, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

38. The intentional discrimination on the basis of Plaintiff's race by Defendant that Plaintiff experienced included her termination/forced resignation, which broke the contract between the parties.

39. The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

40. As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

36.    As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and

emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT II
## RETALIATION IN VIOLATION OF 42 USC § 1981

41. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

42. 42 USC § 1981 prohibits individuals from intentionally discriminating and retaliating against persons who engage in protected activity, including reporting and opposing unlawful acts of race discrimination, in the making and enforcement of contracts.

43. Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded her by the First Amendment and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

44. By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who do not report discrimination, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

45. Plaintiff engaged in activity protected by 42 USC § 1981 when she complained of and opposed unlawful race discrimination.

46. The retaliation by Defendant that Plaintiff experienced included her being subjected to unfair heightened scrutiny, isolation, unattainable job expectations, and excessive workloads in comparison to her white counterparts.

47. The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

48. As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected.

49. But for Defendant's unlawful discrimination against Plaintiff for opposing race discrimination, Plaintiff would not have suffered damages as set forth herein including being disregarded in her respective position and being subject to a hostile work environment.

50. As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT III

## DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101, et seq. ("ELCRA")

51. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

52. At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of the ELCRA.

53. A respondeat superior relationship existed because Plaintiff's supervisors had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct her daily work activities, as alleged in the statement of facts.

54. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to discriminate against an employee on the basis of race.

55. Plaintiff is an African American woman and, as a result, is a member of a protected class for the purposes of the ELCRA.

56. Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class, including but not limited to Defendant disproportionately applying their company policies.

57. The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

58. As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

59. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

60. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV

### RETALIATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT ("ELCRA")

61. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

62. At all material times, Plaintiff was an employee, and Defendants were employers covered by, and within the meaning of, the Elliott-Larsen Civil Rights Act, ("ELCRA").

63. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to retaliate against an employee who has engaged in protected activity.

64. A respondeat superior relationship existed because Defendant's employees had the ability to undertake or recommend tangible decisions affecting Plaintiff or

the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

65. Plaintiff engaged in protected activity when she took the following actions including but not limited to reporting to Defendants' agents constant discrimination and isolation from her coworkers while being subjected to unfair heightened scrutiny, unattainable job expectations, and excessive workloads in comparison to her white counterparts.

66. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior, because she reported the issue directly to an agent of Defendant.

67. After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, which included forcing Plaintiff's termination.

68. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

69. Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

70. As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

71. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

## COUNT V

**DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e *et seq*. ("Title VII")**

72. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

73. At all material times, Defendant was an employer, and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

74. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's skin color.

75. A respondeat superior relationship existed because Defendant and its agents had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

76. Moreover, a respondeat superior relationship existed because Defendant and its agents had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activities, as alleged in the statement of facts.

77. Plaintiff is an African-American woman, and, as a result, is a member of a protected class pursuant to Title VII.

78. Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class, as set forth in the facts section above, including but not limited to treating her differently and holding her to a different standard than those who were not African-American, and other such facts as set forth in this complaint, culminating in her termination.

79. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

80. Plaintiff notified Defendant, through its agents, of the unwelcomed conduct and communication and Defendant failed to remedy the unwelcomed conduct or communication, including but not limited to subjecting her to worse treatment than her colleagues, on the basis of her race.

81. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

82. As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

**COUNT V**

14

## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e *et seq*. ("Title VII")

83. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

84. At all material times, Defendant was an employer and Plaintiff an employee, covered by, and within the meaning of Title VII.

85. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to retaliate against an employee for engaging in protected activity.

86. A respondeat superior relationship existed because Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

87. Plaintiff engaged in protected activity when she took the following actions, including but not limited to, reporting discrimination against her such as being subjected to unfair heightened scrutiny, isolation, unattainable job expectations, and excessive workloads in comparison to her white counterparts.

88. Defendant, through its employees, had knowledge that Plaintiff engaged in protected behavior, because they were present for the actions in question and/or Plaintiff reported it directly to Defendant's agents.

89. Defendant and/or its agents took adverse employment actions against Plaintiff, including but not limited to terminating him.

15

90. But for Plaintiff's participation in protected activity, Defendant would not have taken said adverse employment actions against Plaintiff.

91. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

92. As a proximate result of Defendant's retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

93. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

94. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VI

## DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT OF 1990 42 U.S.C. § 12101, et seq. ("ADA")

95. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

96. At all material times, Plaintiff was an employee, and Defendant was Plaintiff's employer, covered by and within the meaning of the ADA.

97. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

98. Plaintiff informed Defendant of her diagnosis of scoliosis, PTSD, and vertigo disability within the meaning of the ADA.

99. Plaintiff's disabilities under the ADA are qualified, meaning that, with reasonable accommodation, she can perform the essential functions and duties of his job.

100.    Section 12112(a) of the ADA, makes it illegal to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

101.    Plaintiff was discriminated against on the basis of her disability when Defendant treated her differently based upon her disability and treatment related to that disability.

102.    Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

103.    But for Defendant's illegal discrimination, Plaintiff would not have been damaged nor discharged.

104.    As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

105.    As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

106.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VIII

### DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITY ACT, MCL 37.1201, et seq. ("PWDCRA")

107.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

108.    At all material times, Plaintiff was an employee, and Defendant was Plaintiff's employer, covered by and within the meaning of the PWDCRA.

109.    A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

110.    Plaintiff has a disability within the meaning of the PWDCRA.

111.    Plaintiff's disability is qualified, meaning that, with reasonable accommodation, she can perform the essential functions and duties of her job.

112.    MCL 37.1202(b) makes it illegal to, "[d]ischarge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability … that is unrelated to the individual's ability to perform the duties of a particular job or position."

113.     Plaintiff was discriminated against on the basis of her disability when Defendant treated her differently based upon her disability and treatment related to that disability.

114.     Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

115.     But for Defendant's illegal discrimination Plaintiff would not have been damaged.

116.     As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

## COUNT VII

**WRONGFUL DISCHARGE IN VIOLATION OF MICHIGAN PUBLIC POLICY**

117.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

118.     It is the longstanding public policy of the State of Michigan that there are three exceptions to the employment at-will doctrine, and an employer can be found to be liable for wrongful discharge. They are:

a.   Explicit legislative statements prohibiting the discharge, discipline or other adverse treatment of employees who act in accordance with a statutory right or duty;

19

b.  where the alleged reason for the discharge was the failure or refusal of the employee to violate a law in the course or employment; and

c.  where the reason for the discharge was the employee's exercise of a right conferred by a well-established legislative enactment.

119.   Plaintiff's discharge came as the result of his reporting discrimination, unfair treatment, excessive workloads, and isolation in comparison to her white coworkers.

120.   While there is no explicit statute that forbids companies such as Defendant from ignoring the complaints of its employees who submit complaints similar to Plaintiff's, but this failure to take action should not be permitted, and Plaintiff should not have been terminated for complaining about the same and requesting relief.

121.   As a result of Defendant's actions, and consequent harms caused, Plaintiff has suffered such damages in an amount to be proven at trial.

122.   Plaintiff requests relief as described in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

Plaintiff, Sidnei McCarty, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;

2. Exemplary damages in whatever amount which Plaintiff is entitled;

3. An award of lost wages and the value of fringe benefits, past and future;

4. An award of interest, costs, and reasonable attorney fees; and

5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated: October 3, 2025           Respectfully Submitted,

/s/ Carla D. Aikens
Carla D. Aikens (P69530)
Thameka I. Hall (P79693)
CARLA D. AIKENS, P.C.
*Attorneys for Plaintiff*
615 Griswold Street, Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com
thameka@aikenslawfirm.com